IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-189-D

| | | |
|---|---|---|
| RACHELLE CHAPMAN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER** |
| CKE RESTAURANTS HOLDINGS, INC., | ) ) ) | |
| Defendant. | ) | |

On May 8, 2019, Rachelle Chapman ("Chapman" or "plaintiff") filed a class-action complaint against CKE Restaurants Holdings, Inc. ("CKE" or "defendant") alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 1201 et seq., and its implementing regulations, 28 C.F.R. § 36.211, 28 C.F.R. § 36.406, and 28 C.F.R. pt. 36, app. A. [D.E. 1]. Chapman seeks a declaratory judgment, a permanent injunction, class certification, payment of the costs of suit, reasonable attorneys' fees, and "whatever other relief the Court deems just, equitable, and appropriate." Compl. [D.E. 1] 12. On July 1, 2019, CKE moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and to strike the class allegations under Federal Rule of Civil Procedure 12(f) [D.E. 12], and filed a memorandum in support of both motions [D.E. 13]. On July 29, 2019, Chapman responded in opposition to both motions [D.E. 15]. On August 12, 2019, CKE replied [D.E. 16].

As explained below, Chapman does not have standing to pursue her claims. Thus, the court grants CKE's motion to dismiss and dismisses the complaint without prejudice.

I.

On May 8, 2019, Chapman filed a class-action complaint against CKE. See [D.E. 1]. Chapman, a resident of Knightdale, North Carolina, suffered a spinal cord injury that resulted in her paralysis. See id. at ¶ 20. Since her injury, she has used a wheelchair for mobility and "is considered a quadriplegic." Id. Chapman also has become an advocate for those with disabilities. See id. Chapman alleges that she has a disability under 42 U.S.C. § 12102(2) and 28 C.F.R. §§ 36.101 et seq. See id.

CKE, founded in 1941, is headquartered in Franklin, Tennessee. See id. at ¶ 21. It "owns, operates, and franchises quick-service restaurants under the Carl's Jr., Hardee's, Green Burrito, and Red Burrito names." Id. As of October 18, 2016, CKE has 3,279 franchised or company-operated restaurants across the United States, its territories, and internationally. See id. Chapman alleges that CKE is a public accommodation under 42 U.S.C. § 12181(7)(B). See id.

Chapman splits her factual assertions into two sections that correspond to her two legal claims: (1) "Plaintiff Has Been Denied Full and Equal Access to Defendant's Facilities" and (2) "Defendant Repeatedly Denies Individuals With Disabilities Full and Equal Access to Defendant's Facilities." Id. at 6–7.

As for her individual allegation concerning denial of full and equal access, Chapman alleges that she has been to CKE's facility at 8805 Six Forks Road in Raleigh within the last year, and that "she experienced unnecessary difficulty and risk due to excessive slopes in a purportedly accessible parking area." Id. at ¶ 23. She states that she plans to return to that facility for numerous reasons, including her daughter's desire to do so, convenience during her shopping trips, and to test CKE's ADA compliance. See id. at ¶ 24. Nonetheless, Chapman asserts that CKE's continued non-compliance and "policies and practices" will deter her "from returning to and fully and safely

accessing [CKE's] facilities." Id. at ¶ 26.

As for her broader allegation concerning CKE's alleged denial of full and equal access, Chapman alleges that CKE "employs centralized policies, practices, and procedures with regard to the design, construction, alteration, maintenance, and operation of their facilities." Id. at ¶ 29. As a result of CKE's centralized policies and practices, CKE allegedly has "systematically and routinely violated the ADA by designing, constructing, and altering facilities so that they are not readily accessible and are usable, by failing to remove architectural barriers, and by failing to maintain and operate facilities so that the accessible features of [CKE's] facilities are maintained." Id. at ¶ 30. Chapman then alleges that violations found within four CKE restaurants illustrate that CKE's policies "routinely result" in ADA violations:

> a. 5639 Hillsborough Road, Raleigh, NC
>
>> i. Excessive running slope in purportedly accessible parking space;
>
> b. 2563 Ashley River Road, Charleston, SC
>
>> i. Excessive cross slopes in purportedly accessible parking space;
>
> c. 300 West Main Street, Circleville, OH
>
>> i. No designated accessible parking; and
>> ii. Excessive running slope at door;
>
> d. 8209 Springsboro Pike, Miamisburg, OH
>
>> i. Excessive running slope at door.

Id. at ¶ 31. According to Chapman, "[CKE's] systemic access violations demonstrate that [CKE] either employs policies and practices that fail to design, construct, and alter its facilities so that they are readily accessible and usable and/or that [CKE] employs maintenance and operational policies and practices that are unable to maintain accessibility." Id. at ¶ 33.

3

Chapman asserts that CKE's ADA violations fulfill the requirements for a class action. See id. at ¶¶ 36–41. Specifically, she seeks to represent a class that includes:

> All persons with qualified mobility disabilities who were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any Carl's Jr., Hardee's, Green Burrito, and Red Burrito location that is owned, operated, or controlled by CKE Restaurants in the United States on the basis of disability because such persons encountered accessibility barriers due to [CKE's] failure to comply with the ADA's accessible parking and path of travel requirements.

Id. at ¶ 36. Chapman seeks a class for injunctive and declaratory relief under Federal Rule of Civil Procedure 23(b)(2) and asserts that the class fulfills the class requirements of numerosity, typicality, and commonality under Rule 23(a). See id. at ¶¶ 37–39, 41. Chapman also asserts that she will adequately represent the class under Rule 23(a). See id. at ¶¶ 37–41.

On July 1, 2019, CKE moved to dismiss Chapman's complaint or, in the alternative, to strike her class allegations. See [D.E. 12]. First, under Rule 12(b)(1), CKE argues that Chapman lacks standing because she failed to state an injury in fact or redressability. See id. at 1. Second, under Rule 12(b)(6), CKE argues that Chapman has failed to state a claim because she "fails to allege facts showing that CKE owns, leases, or operates any of the five restaurants listed in the [c]omplaint," her factual assertions concerning CKE's policies are "speculative," and her factual allegations concerning her visit to a CKE restaurant "fail to meet the pleading standard." Id. at 1–2. Third, under Rule 12(f), CKE argues that Chapman fails to meet Rule 23's requirements because she "presents numerous factual questions that would require individual assessment of thousands of restaurant locations across the United States." Id. at 2.

On July 29, 2019, Chapman responded in opposition. See [D.E. 15]. In her response, Chapman argues that: (1) she has standing because she has alleged her intent to return to the CKE restaurant in the complaint and that she is deterred from returning; (2) she has pleaded sufficient

4

facts to state an ADA violation; and (3) a motion to strike the class allegations is premature because "[s]triking the allegations at the pleading stage is viewed with disfavor and reserved only for situations where it is clear no discovery could change the determination." [D.E. 15] 10–11.

On August 12, 2019, CKE replied. See [D.E. 16] 2. CKE replies that "three core failures cut across the grounds CKE has argued for dismissal or, in the alternative, striking the class claims." Id. at 2. Specifically, CKE argues that:

> (1) the complaint's vague allegations of difficulty during a trip to a Hardee's in Raleigh are insufficient for Chapman to proceed individually, let alone as the head of a nationwide class; (2) the allegations that CKE "owns, operates, or controls" the locations at issue are conclusory and fail to address CKE's franchise-based business; and (3) the assertion that CKE either has or lacks a policy that violates the ADA is speculative and factually unsupported.

Id. CKE contends that "the lack of any factual allegations regarding a policy or practice means [Chapman] cannot show an injury traceable to CKE, as required for standing under Rule 12(b)(1). That same failure also undercuts her assertion that she has stated a claim under Rule 12(b)(6), and it prevents this case from proceeding as a class action under Rule 23." Id.

## II.

A motion to dismiss under Rule 12(b)(1) for lack of standing tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted). A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). When considering a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings without converting the proceeding into one for summary judgment." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005) (quotation omitted); see Evans v. B.F. Perkins Co., 166

5

F.3d 642, 647 (4th Cir. 1999). A plaintiff must establish that this court has subject-matter jurisdiction over her claims. See, e.g., Steel Co., 523 U.S. at 104; Evans, 166 F.3d at 647; Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). However, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject[-]matter jurisdiction, the . . . court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged [in the complaint and any additional materials]." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009).

A plaintiff establishes standing by showing: (1) that the plaintiff has "'suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'"; (2) "'a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court'"; and (3) that it is "'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision'" from the court. Chambers Med. Techs. of S.C., Inc. v. Bryant, 52 F.3d 1252, 1265 (4th Cir. 1995) (alterations omitted) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). These requirements are "the irreducible constitutional minimum of standing." Lujan, 504 U.S. at 560. If a plaintiff does not have standing, the court does not have subject-matter jurisdiction to hear the plaintiff's claims. See, e.g., Lujan, 504 U.S. at 560–61; White Tail, 413 F.3d at 459; Payne v. Sears, Roebuck & Co., No. 5:11-CV-614-D, 2012 WL 1965389, at *2–3 (E.D.N.C. May 31, 2012) (unpublished).

A.

Chapman must demonstrate that her injury constitutes "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical." Lujan, 504 U.S. at 560 (quotation and citations omitted). In addition, because Chapman seeks declaratory and injunctive relief, the court must determine whether her injury is accompanied by "any continuing, present adverse effects." Id. at 564 (quotations omitted). Chapman's injury requirement is twofold: (1) a past injury and (2) "a likelihood that [she] will again suffer such injuries." Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 455 (4th Cir. 2017); see Bryant v. Cheney, 924 F.2d 525, 529 (4th Cir. 1991).

Nanni provides the framework for analyzing Chapman's past-injury standing. In Nanni, the Fourth Circuit reiterated what it introduced in Daniels v. Arcade, L.P., 477 F. App'x 125 (4th Cir. 2012) (unpublished): "a past injury is sufficiently pleaded for purposes of an ADA claim where a disabled individual who requires a wheelchair for mobility alleges that he has personally encountered noncompliant architectural barriers and describes how those barriers caused him harm." Nanni, 878 F.3d at 455; see Daniels, 477 F. App'x at 129–30.

As for her mobility, Chapman has a disability and uses a wheelchair. See [D.E. 1] ¶ 20; cf. Nanni, 878 F.3d at 448–49; Daniels, 477 F. App'x at 126. As for her own experience, Chapman "has visited [CKE's] facilities located at 8805 Six Forks Road, Raleigh, NC, including within the last year, where she experienced unnecessary difficulty and risk due to excessive slopes in a purportedly accessible parking area." [D.E. 1] ¶ 24. Although both Nanni and Daniels involved a plaintiff who had made multiple visits, Chapman's single visit does not affect the nature or extent of her past injury. As for the "noncompliant architectural barriers," Chapman alleges that she encountered "excessive slopes" at CKE's facility that caused her "unnecessary difficulty and risk" and impeded her "ability to access and safely use [CKE's] facilities." Id. at ¶¶ 23, 25. Although Chapman could have been more specific, she has plausibly alleged a past injury. See Nanni, 878 F.3d at 455.

7

In Nanni, the Fourth Circuit also addressed the future-injury requirement. A plaintiff "satisfies the future injury requirement by plausibly alleging a real and immediate threat of repeated injury." Id. (quotation omitted). In Nanni, the Fourth Circuit held that "when an ADA plaintiff has alleged a past injury at a particular location, his plausible intentions to thereafter return to that location are sufficient to demonstrate the likelihood of future injury." Id; see Daniels, 477 F. App'x at 129–30; accord Gaylor v. Hamilton Crossing CMBS, 582 F. App'x 576, 580 (6th Cir. 2014) (unpublished); Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1336–37 (11th Cir. 2013); Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 188 (2d Cir. 2013) (per curiam); Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1074 (7th Cir. 2013); D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1037 (9th Cir. 2008); Tandy v. Wichita, 380 F.3d 1277, 1284 (10th Cir. 2004); Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000). Moreover, in Nanni, the Fourth Circuit implicitly eschewed the four-factor test that some courts (including this one) used to analyze future injury. See Nanni, 878 F.3d at 456 ("Put simply, we are satisfied that the Daniels decision properly described and applied the pleading obligations for standing with respect to Lujan's injury-in-fact element. We therefore adopt the Daniels principle and apply it in disposing of this appeal."); cf. Payne, 2012 WL 1965389, at *3; Nat'l Alliance v. Waffle House, Inc., No. 5:10–CV–375–FL, 2011 WL 2580679, at *2 (E.D.N.C. June 29, 2011) (unpublished). Nonetheless, the Fourth Circuit emphasized in Nanni that "the facts of each case control the plausibility analysis." Nanni, 878 F. 3d at 457.

Chapman alleges that she "plans to return to [CKE's] facilities several times per year." [D.E. 1] ¶ 24. Moreover, "she regularly visits Hardees when she is in the area to sho[p], or on one of her regular trips downtown to continue to test [CKE's] facilities' compliance with the ADA[.] Furthermore, [Chapman] intends to return to [CKE's] facilities to ascertain whether those facilities

8

remain in violation of the ADA." Id. Chapman's proximity to the Hardees (i.e., living approximately 16–20 miles from it) is relevant to, but not dispositive of, her likelihood of future injury. See Nanni 878 F.3d at 456. In addition, Chapman's likelihood of future injury is the same sort of injury that she allegedly suffered from her previous visit—the "unnecessary difficulty and risk" from "excessive slopes." [D.E. 1] ¶ 23. Although Chapman couches her complaint in terms of visiting multiple CKE restaurants in the future, this assertion necessarily includes visiting the location at 8805 Six Forks Road. Under Nanni, Chapman need not provide specific dates for her return to CKE's 8805 Six Forks Road location in order to satisfy future injury. See Nanni, 878 F.3d at 456. Here, Chapman plausibly alleges that she will return to 8805 Six Forks Road and suffer the same denial of equal access to CKE's goods and services. Thus, Chapman plausibly alleged a future likelihood of injury. See id.

B.

Chapman also must plausibly allege causation and redressability in order to have standing. See Lujan, 504 U.S. at 560–61. Causation requires a "connection between the injury and the conduct complained of–the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Id. at 560 (quotation and alterations omitted); see Chambers, 52 F.3d at 1265.

Chapman fails to satisfy the causation requirement for at least two reasons. First, Chapman has not tied CKE to her alleged injury (i.e., the "unnecessary difficulty and risk to due excessive slopes in a purportedly accessible parking area"). [D.E. 1] ¶¶ 23–28. Causation for a plaintiff cannot be "the result of the independent action of some third party not before the court." Lujan, 504 U.S. at 560 (quotation and alteration omitted). Here, numerous third parties could have caused the alleged injury, including a franchisee, the owner of the property in question, or a subsidiary. Chapman must

9

do more than merely allege an injury at a CKE facility. The complaint must include a level of specificity as to CKE–whether it be ownership of the land, direct operation or control of the facility, or even a franchise-wide policy or procedure. Although in Chapman's response she claims to possess "affidavits and evidence establishing [CKE] owns each of the locations identified in the [c]omplaint," [D.E. 15] 20 n.6, Chapman cannot amend her complaint via briefing. See, e.g., U.S. ex rel. Carter v. Haliburton Co., 866 F.3d 199, 210 n.6 (4th Cir. 2017); Murray Energy Corp. v. Admin. of Envtl. Protection Agency, 861 F.3d 529, 537 n.5 (4th Cir. 2017); vonRosenberg v. Lawrence, 849 F.3d 163, 167 n.1 (4th Cir. 2017); S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184–85 (4th Cir. 2013); Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 617 (4th Cir. 2009); Shinaberry v. Town of Murfreesboro, No. 2:17-CV-7-D, 2019 WL 5446712, at *5 n.4 (E.D.N.C. Oct. 23, 2019) (unpublished). In the complaint, CKE's connections to the facilities are speculative.

Second, Chapman's allegations concerning CKE's "centralized policies, practices, and procedures" fail to plausibly connect her injury to CKE action. Chapman asserts that CKE's centralized policies violate the ADA, or, if there are no centralized policies, then CKE's lack of centralized policies violates the ADA. See [D.E. 1] ¶¶ 29–30; [D.E. 15] 20–21. It cannot be both. Although at this stage the court accepts plaintiff's allegations as true, the former disproves the latter, and vice versa. To hold otherwise is to permit speculation to prove causation. See Lujan, 504 U.S. at 560; Mielo v. Steak 'n Shake Operations, Inc., No. 15-190, 2019 WL 1330836, at *13 (W.D. Pa. Mar. 25, 2019) (unpublished). In Mielo, the court concluded that "[p]laintiffs have failed to demonstrate how their individual injuries can be traced to Steak 'N Shake's lack of a maintenance policy, as opposed to a myriad of other potential causes." Id. These "other potential causes" include "improper construction, faulty modification, weather, an inadequate policy, rogue disobedience of

10

the policy, poor execution of the policy, or some other cause." Id. at *12. The causation problems identified in Mielo also apply to Chapman. Id.; see King v. O'Reilly Auto., Inc., No. 2:15-CV-230-RMP, 2016 WL 868223, at * 3 (E.D. Wash. Mar. 4, 2016) (unpublished) ("Plaintiff's [c]omplaint fails to state how the alleged examples of noncompliance adhere to any common policy or design. The [c]omplaint implies the presence of a policy to which these alleged structural deficiencies adhere, but the [c]ourt finds that implication, combined with [p]laintiff's conclusory statements, to be insufficient.").

In opposition, Chapman cites several distinguishable cases. For example, Chapman cites Colorado Cross-Disability Coal. v. Abercrombie & Fitch Co., No. 09-cv-02757, 2011 WL 2173713 (D. Colo. June 2, 2011) (unpublished), for the proposition that her allegations concerning a "uniform policy and design creating common barriers" are sufficient to confer standing. Id. at *4; see [D.E. 15] 21–22. But Chapman does not allege a uniform policy and design creating common barriers. Rather, Chapman asserts no facts to show that such a uniform design exists. Cf. [D.E. 1] ¶ 30. To the extent that Chapman contends that other CKE facilities have excessive sloping, see id. at ¶ 31, Chapman does not plausibly allege that such excessive sloping results from a common or centralized CKE policy.

Chapman also cites Gray v. Golden Gate Nat. Recreational Area, 279 F.R.D. 501 (N.D. Cal. 2011), and Californians for Disability Rights, Inc. v. California Dep't of Transp., 249 F.R.D. 334 (N.D. Cal. 2008), to support her factual assertions of a CKE common policy. See [D.E. 15] 20 & n. 7. In those cases, however, the nature of a common ADA policy was at issue in the class-certification stage, not whether one existed at all at the pleading stage. See Gray, 279 F.R.D. at 511–15; Californians for Disability Rights, 249 F.R.D. at 345. Here, Chapman simply speculates and has not plausibly alleged a common policy of CKE sufficient to meet the causation requirement.

11

Chapman also fails to meet redressability. Redressability requires that it "must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 561 (quotations omitted); see Beck v. McDonald, 848 F.3d 262, 269 (4th Cir. 2017). Because Chapman is seeking declaratory and injunctive relief, redressability is necessarily forward looking. Thus, any relief must address the continuing, present adverse effects of an alleged injury. See Lujan, 504 U.S. at 564; Nanni, 878 F.3d at 454; see also City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); Powell v. Wheaton WIC Ctr., No. PWG-18-535, 2019 WL 528224, at *2–3 (D. Md. Feb. 11, 2019) (unpublished).

Chapman seeks an "injunction to remove the barriers currently present at [CKE's] facilities and an injunction to modify the policies and practices that have created or allowed, and will create or allow, inaccessibility." [D.E. 1] 8. Chapman, however, does not plausibly allege that an order to CKE will fix the alleged injuries. Specifically, there are no facts that show CKE has control over the alleged features that have caused these injuries at the facility in question, let alone a common policy that CKE has imposed throughout its facilities that it can change. Moreover, as with causation, Chapman's dual allegation of a common policy or lack thereof leaves the court to speculate as to how a favorable decision would redress her injuries. Thus, under the facts as pleaded, this court cannot remedy Chapman's injuries through a favorable decision. Alternatively, even if this court could reconcile Chapman's dual claims, an injunction to obey the law is disfavored. See City of New York v. United States Dep't of Def., 913 F.3d 423, 431 (4th Cir. 2019); see also Int'l Longshoremen's Ass'n, Local 1291 v. Phil. Mar. Trade Ass'n, 389 U.S. 64, 76 (1967); United States E.E.O.C. v. Fed. Express Corp., No. WDQ-04-3129, 2006 WL 1134208, at *2 (D. Md. Apr. 25, 2006) (unpublished) ("The ADA remains in effect, and an injunction to obey that law would add nothing.") (quotation omitted), aff'd sub nom., E.E.O.C. v. Fed. Express Corp., 513 F.3d 360 (4th

Cir. 2008); Mielo v. Bob Evans Farms, Inc., No. CIV.A. 14-1036, 2015 WL 1299815, at *12 (W.D. Pa. Mar. 23, 2015) (unpublished) ("An injunction cannot simply order the defendant to obey the law.").

C.

As for Chapman's class-action claim, see [D.E. 1] ¶¶ 36–41, the claim fails. "In a class action, we analyze standing based on the allegations of personal injury made by the named plaintiffs. Without a sufficient allegation of harm to the named plaintiff in particular, plaintiffs cannot meet their burden of establishing standing." Beck, 848 F.3d at 269–70 (quotation and citation omitted); see Dreher v. Experian Info. Sols., Inc., 856 F.3d 337, 343 (4th Cir. 2017); Doe v. Obama, 631 F.3d 157, 160 (4th Cir. 2011); see also Haney v. USAA Cas. Ins. Co., 331 F. App'x 223, 227 n.5 (4th Cir. 2009) (unpublished); Berry v. Wells Fargo & Co., No. 3:17-304-JFA, 2017 WL 7411165, at *5 (D.S.C. July 31, 2017) (unpublished). Accordingly, because Chapman lacks standing for her individual claim, she lacks standing to pursue a nationwide class action.

III.

In sum, the court GRANTS CKE's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) [D.E. 12] and DISMISSES the complaint WITHOUT PREJUDICE.

SO ORDERED. This 12 day of March 2020.

JAMES C. DEVER III
United States District Judge

13